SLIP OP 12 -18

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| RACK ROOM SHOES, SKIZ IMPORTS LLC, and FOREVER 21, INCORPORATED,<br><br>             Plaintiffs,<br><br>             v.<br><br>UNITED STATES,<br><br>             Defendant. | Before: Donald C. Pogue, Chief Judge<br>        Jane A. Restani, Judge<br>        Judith M. Barzilay, Sr. Judge.<br><br>Consol. Court No. 07-00404 |

## OPINION

[Defendant's motion to dismiss is granted.]

Dated: February 15, 2012

    John M. Peterson, George W. Thompson, Maria E. Celis, Russell A. Semmel, and Richard F. O'Neill, Neville Peterson LLP, of New York, NY, for the Plaintiff, Rack Room Shoes.

    Michael T. Cone, McCullough Ginsberg Montano & Partners LLP, of New York, NY, for the Plaintiff, SKIZ Imports LLC.

    Damon V. Pike, The Pike Law Firm P.C., of Decatur, GA, for the Plaintiff, Forever 21, Inc.

    Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the Defendant.  With him on the briefs were Tony West, Assistant Attorney General; Jeanne E. Davidson, Director; and Aimee Lee, Trial Attorney.  Of counsel on the briefs were Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, and Leigh Bacon, Office of the General Counsel, United States Trade Representative.

    **Pogue, Chief Judge**:  In this action, Plaintiff Rack Room Shoes and other United States importers assert that certain

glove, footwear and apparel tariffs violate the Equal Protection

Clause of the Constitution.  U.S. Const. amend. XIV, § 1, cl. 2.

Specifically, Plaintiffs argue that because the Harmonized Tariff

Schedule of the United States ("HTSUS") uses the gender and age

of intended users of certain imported products to distinguish

between tariff rates, and because those tariff rates are not

equal, the HTSUS therefore unconstitutionally discriminates on

the basis of gender and/or age.[1]  The government moves to dismiss

for failure to state a claim.

　　　Because we conclude that the Plaintiffs' complaints do not

plausibly show an invidious governmental intent to discriminate,

as further explained below, we grant the government's motion.

　　　We have jurisdiction pursuant to 28 U.S.C. § 1581(i)(1).

## BACKGROUND

　　　Specific HTSUS provisions that Plaintiffs challenge were

previously addressed in Totes-Isotoner Corp. v. United States,

594 F.3d 1346, 1358 (Fed. Cir. 2010) ("Totes III"), cert. denied,

131 S. Ct. 92 (2010), affirming this court's decision in Totes-

Isotoner Corp. v. United States, __ CIT __, 569 F. Supp. 2d 1315

(2008) ("Totes I"), and the court's denial of Plaintiff's motion

---

[1] For example, "[m]en's" leather gloves classified in HTSUS
subheading 4203.2930 incur a duty rate of 14 percent ad valorem,
whereas gloves for "other persons" are classified under HTSUS
subheading 4203.2940 at the lower duty rate of 12.6 percent ad
valorem. See Harmonized Tariff Schedule of the United States, 19
U.S.C. § 1202.

for rehearing, <u>Totes-Isotoner Corp. v. United States</u>, __ CIT __,
580 F. Supp. 2d 1371 (2008) ("<u>Totes II</u>").[2]

     In the <u>Totes</u> line of cases, we rejected Totes' argument that
merely pleading the existence of a gender-based classification in
the HTSUS "suffices to establish an inference of unconstitutional
discrimination." <u>Totes II</u>, 580 F. Supp. 2d at 1378.
Accordingly, we dismissed Plaintiff's complaint for failure to
state a claim under the pleading standard set forth by the
Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544
(2007) ("<u>Twombly</u>").[3]  <u>Totes I</u>, 569 F. Supp. 2d at 1328; <u>Totes II</u>,

---

[2] In <u>Totes I</u>, Plaintiff Totes challenged HTSUS headings
covering men's and women's leather gloves. Plaintiffs here
challenge, again, the same HTSUS rates for leather gloves, in
addition to certain HTSUS rates for apparel and footwear.  The
<u>Totes</u> line of cases recognized that the Plaintiff had standing
and the Plaintiff's challenge was not barred under the political
question doctrine. <u>Totes III</u>, 594 F.3d at 1352-53.

[3] In <u>Twombly</u>, the Supreme Court ruled that court pleadings
require "more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do."
<u>Twombly</u>, 550 U.S. at 555.  Rather, plausibility is the central
tenet of the <u>Twombly</u> pleading standard.  Following <u>Twombly</u>, in
<u>Totes III</u>, the Court of Appeals held that initial "[f]actual
allegations must be enough to raise a right to relief above the
speculative level . . . [including] enough factual matter (taken
as true) to suggest that [a claim is plausible]." <u>Totes III</u>, 594
F.3d at 1354 (internal citation omitted).
     In the context of discrimination claims, the Supreme Court
further explained the pleading requirements, holding that a
plaintiff "must plead sufficient factual matter to show that [the
government] adopted . . . [the] policies at issue . . . for the
purpose of discriminating[.]" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,
129 S. Ct. 1937, 1948-49 (2009).  Determining whether a claim
meets the plausibility standards set forth in <u>Twombly</u> and <u>Iqbal</u>
requires that courts draw on "judicial experience and common

580 F. Supp. 2d at 1380.

In affirming, the Court of Appeals held that the HTSUS provisions at issue were not facially discriminatory. Totes III, 594 F.3d at 1358; see also id. at 1359 (Prost, J., concurring) ("[T]he disputed tariff classification is not facially discriminatory."). HTSUS gender references are to the principal or chief use of products by one sex or another. This is different from the use of a suspect classification that requires people to be treated differently depending on their sex. Thus, the HTSUS gender references do not support an inference that the classifications have a discriminatory purpose. There is nothing "objectively invidious" about the tariff provisions' reference to gender. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 270 (1993).

The Court of Appeals also extended its analysis to conclude that an allegation of disparate impact in the tariff/tax context is also insufficient to provide a basis for a plausible claim of discriminatory purpose.[4]  Totes III, 594 F.3d at 1357-58 ("[W]e

---

sense," when evaluating a plaintiff's claim.  Id. at 1950.

[4] In Totes I and Totes II, we did not reach the issue of the weight to be attributed to allegations of disparate impact because the Plaintiff had failed to amend its complaint to make such a claim.  Totes I, 569 F. Supp. 2d at 1328 ("[B]ecause the challenged tariff classifications are, at worst, 'in between' classifications that impose a facially discriminatory tax and classifications that are not facially discriminatory, Plaintiff

think that in the area of taxation and tariffs, something more
than disparate impact is required to establish a purpose to
discriminate for the purposes of pleading an equal protection
violation. . . . the mere existence of disparate impact does not
establish impermissible discrimination.").[5]   After recognizing

---

must at least include an allegation that the challenged tariff
classifications distribute the burdens of the tax rate imposed in
a way that disadvantages one sex as a whole, or has a
disproportionate impact based on sex.").  After Totes opted not
to amend its pleadings, the court dismissed Totes' complaint.

   [5] "[A]n equal protection claim requires alleging either (a)
that a law is facially discriminatory against natural persons, or
(b) that the law has a disparate impact on natural persons
resulting from a discriminatory purpose."  Totes III, 594 F.3d at
1359 (Prost, J., concurring) (citing Raytheon v. Hernandez, 540
U.S. 44, 52-53 (2003); Vill. of Arlington Heights v. Metro.
Housing Dev. Corp., 429 U.S. 252, 264-65 (1977)).
   The Court of Appeals concluded, however, that the mere
existence of disparate impact is not a sufficient allegation.
Rather, as noted above, such impact must result "from a
discriminatory purpose."  Id. at 1359.  Therefore, to proceed on
a disparate impact claim, a plaintiff must prove "'[a]n invidious
discriminatory purpose[, which] may often be inferred from the
totality of the relevant facts,'" but "official action will not
be held unconstitutional solely because it results in a
[disparate] impact.'"  Id. at 1356 (quoting Vill. of Arlington
Heights, 429 U.S. at 264-65; Washington v. Davis, 426 U.S. 229,
242 (1976)); see also Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir.
2001) ("[A] plaintiff seeking to establish a violation of equal
protection by intentional discrimination may proceed in 'several
ways,' including by pointing to a law that expressly classifies
on the basis of race, a facially neutral law or policy that has
been applied in an unlawfully discriminatory manner, or a
facially neutral policy that has an adverse effect and that was
motivated by discriminatory animus." (emphasis added)).
   Plaintiff Forever 21 urges the court to limit Totes III by
adopting a presumption that where tariff descriptions plausibly
suggest actionable discrimination based on gender or age, it will
be inferred that the government intended this discrimination to

that all schemes of taxation necessarily contain some inherent
discriminatory impact, the Appeals Court held that "[i]n the area
of customs duties, even more than in the area of taxation, it is
hazardous to infer discriminatory purpose from discriminatory
impact." Totes III, 594 F.3d at 1358.

Following the Supreme Court's denial of writ of certiorari
in Totes III, we allowed the current Plaintiffs to re-file their
complaints, consolidating them into three test cases: Rack Room
Shoes v. United States (07-00404) and its member cases SKIZ
Imports LLC v. United States (11-00074), and Forever 21, Inc. v.
United States, (11-00075). Plaintiffs in these test cases assert
additional facts which they claim are sufficient to state a claim
of governmental intent to discriminate.

### DISCUSSION

The precise issue now presented by the government's motion
is whether Plaintiffs' Amended Complaints, stripped of their
legal conclusions, contain sufficient facts to render plausible a
claim of governmental intent to discriminate by way of the tariff
rates at issue. Totes III, 594 F.3d at 1354-55; Twombly, 550

---

be invidious. Such an approach, however, is foreclosed by both
the majority opinion and the concurrence in Totes III, which
recognize that the tariff provisions at issue are not facially
discriminatory and require some plausible basis for an inference
of unlawful discriminatory intent or purpose.

U.S. at 555-56; Iqbal, 129 S. Ct. at 1950.[6]

As noted above, the Court of Appeals held that the
challenged provisions of the HTSUS are not facially
discriminatory.  Totes III, 594 F.3d at 1358.  In addition, in
the context of tariffs, an allegation of disparate impact is also
insufficient to ground a discrimination claim.  Id. at 1356.[7]  It
thus follows that Plaintiffs' allegation in the Amended
Complaints that the identified tariff rates are facially

---

[6] As in the Totes line of cases, the government again
asserts that this case should be dismissed because the Plaintiffs
lack third party standing.  Because the Court of Appeals clearly
found that Totes had third party standing, Totes III, 594 F.3d at
1359 n.2, this issue has already been resolved, and the court
need not address it further.

The government also asserts that the court may not hear
Plaintiff Skiz's complaint because no agency action has taken
place that the court can review.  Therefore, Defendant argues,
Skiz's claim is not ripe for review.

The court need not decide this issue because Rack Room
Shoes' and Forever 21's claims provide a sufficient basis to test
the adequacy of all Plaintiffs' pleadings and, as discussed
infra, those pleadings fail to state a claim.

[7] In Totes III, the Court of Appeals reasoned that tariffs
constitute a unique area of law, further diminishing the
sufficiency of a disparate impact claim.  While "[i]n contexts
such as jury selection, employment, or fair housing, an
allegation of disparate impact may . . . be sufficient to make
out a prima facie case of discrimination . . . we think a
different approach is required in the tariff context."  Totes
III, 594 F.3d at 1356 (citations omitted).  This distinction, the
Court of Appeals explains, exists because (1) Congress is
concerned with achieving trade policy objectives rather than
focusing on the characteristics of retail goods; and (2)
disparate treatment in this case is not necessarily invidious –
case law establishes that discrimination is inherent to taxation,
and Congress has broad authority to levy taxes, which by the
court's reasoning, include import duties.  Id. at 1356-58.

discriminatory and  disproportionately affect differently

gendered or aged users is also insufficient to render plausible

an inference of invidious discrimination.[8]

     Therefore, Plaintiffs must now allege sufficient additional

facts to make plausible their claim that Congress intended to

discriminate between male and female users – or between older and

younger users – in the provisions of the HTSUS.  Totes III, 594

F.3d at 1358.  To move forward on their claim, Plaintiffs must

sufficiently plead "'[a]n invidious discriminatory purpose[,

---

     [8] The Government also argues that Plaintiffs' disparate
impact pleading is flawed because Plaintiffs do not allege that
tariff rates consistently favor goods associated with one gender
or age over another.  This is correct.  Although Plaintiffs claim
that they, as importers, are "disproportionately impacted" by the
HTSUS tariff rates at issue, Rack Room Shoes Am. Compl. at ¶ 15,
ECF No. 9, there is no factual indication in the Amended
Complaints that the tariff classifications result in a
discriminatory application of the burdens of the tax to one
particular sex or age group.  See Totes I, 569 F. Supp. 2d at
1328 n.17 ("Cf. Engquist v. Oregon Dept. of Agriculture, 553 U.S.
591, 601 (2008)("Our equal protection jurisprudence has typically
been concerned with governmental classifications that 'affect
some groups of citizens differently than others.' " (quoting
McGowan v. Maryland, 366 U.S. 420, 425 (1961)))").  Thus any
alleged discriminatory impact is far from clear enough as to
plausibly indicate a discriminatory purpose. Cf. Yick Wo v.
Hopkins, 118 U.S. 356, 373 (1886) (discriminatory application of
regulatory laundry ordinance to Chinese subject, without reason,
found sufficient to infer discriminatory intent); Wengler v.
Druggists Mutual Insurance Co., 446 U.S. 142, 147-49 (1980)
(holding that a statutory provision – denying a widower benefits
on his wife's work-related death unless he was either mentally or
physically incapacitated or could prove dependence on his wife's
earnings but granting a widow death benefits without proof of
dependence – discriminated against both men and women, i.e.
working women and their male spouses).

which] may often be inferred from the totality of the relevant
facts;'" however, agency action "will not be held
unconstitutional solely because it results in a [disparate]
impact."  Id. at 1356 (internal citation omitted); see also City
of Mobile v. Bolden, 446 U.S. 55, 66 (1980)(proof of purposeful
discrimination is necessary to an Equal Protection violation).

Plaintiffs concede that discriminatory purpose "implies more
than intent as volition or intent as awareness of consequences."
Rack Room Shoes Mem. Opp'n. Def.'s Mot. Dismiss at 14, ECF No. 24
("Rack Room Shoes Response"). Rather, discriminatory purpose in
this particular context arises only when Congress selects or
reaffirms a particular course of action "because of" and not
merely "in spite of," its adverse effects upon an identifiable
group.  Personnel Administrator of Massachusetts v. Feeney, 442
U.S. 256, 279 (1979).  Plaintiffs must show that "the legislature
was motivated by discriminatory intent, rather than by other,
lawful action."  Rack Room Shoes Response at 11 n.10.
Accordingly, we review the additional factual allegations
Plaintiffs add to their Amended Complaints to determine whether
those allegations support a plausible inference of governmental
intent to discriminate based on the relevant tariff provisions'
adverse effects upon an identifiable sex or age group.

The Amended Complaints contain two such additional
allegations.  First, Plaintiffs allege that "Congress intended to

discriminate by directing and implementing classifications based
on gender when it could have used other non-gender factors to
distinguish or to separate merchandise for duty assessment
purposes, or could have used non-tariff measures to effectuate
governmental purposes other than raising revenue." Rack Room
Shoes Am. Compl. at ¶ 31. Plaintiffs argue that because Congress
"has at its disposal a virtually infinite number of ways to
impose . . . customs duties" and instead chose to differentiate
between products by gender or age, it therefore must have
intended to discriminate between gender and age groups. Rack
Room Shoes Response at 16.

Plaintiffs' assertion, however, adds nothing to the claim,
already rejected in <u>Totes III</u>, that the use of gender in tariff
classifications evidences a discriminatory purpose. Rather, it
simply re-asserts Plaintiffs' rejected claim that the tariff
classifications at issue are facially discriminatory. Moreover,
Plaintiffs' claim that Congress could have used other means is an
allegation built only upon the language of the provision, raising
nothing in the way of further facts, and indeed nothing in terms
of discriminatory intent. As such, these conclusory assertions
do not rise to the level of factual plausibility required by
<u>Twombly</u> and <u>Iqbal</u>.

Second, Plaintiffs cite the U.S. Tariff Commission's Tariff

Classification Study of 1960[9] for the proposition that certain

age and gender distinctions within the HTSUS are of

"questionable" economic justification.[10]  This commentary on the

merits of the distinctions between the proposed tariff rates is,

at most, a critique of the precursors to the tariff provisions

being challenged here and does not indicate Congressional intent

in any manner.  Cf. Matrixx Initiatives, Inc. v. Siracusano, 131

S. Ct. 1309, 1322 (2011) (finding that reports from three medical

professionals and presenting a wide range of occurrences of

anosmia constituted more than  a mere "handful of anecdotal

reports").  Moreover, the fact that these distinctions' original

economic justification may have blurred with time does not render

their purpose discriminatory.  On the contrary, it actually

---

[9] Plaintiffs insist that the Tariff Classification Study is
"official legislative history" from a prior tariff, but offer
nothing other than their conclusory label to support this claim.
Forever 21 & SKIZ Resp. Def.'s Mot. Dismiss at 3, ECF No. 27
("Forever 21 & SKIZ Response").  Indeed, the document submitted
appears to be authored by one person, providing his particular
version of events.

[10] Specifically, Plaintiffs cite to a passage that states:

The proposed [TSUS provision] combines all McKay-sewed
leather footwear in one tariff provision . . . thereby
eliminating present distinctions . . . according to the
age and sex of the wearer for which the footwear is
designed.  These distinctions are often difficult if
not impossible to make and their economic justification
is questionable.

Forever 21 & SKIZ Response at 3.

reinforces the premise that such distinctions have a rational historic purpose.

Congressional distinctions do not prove invidious intent. As the Supreme Court has held, "[i]nherent in the power to tax is the power to discriminate in taxation." Leathers v. Medlock, 499 U.S. 439, 451 (1991); see also Washington v. Davis, 426 U.S. at 248. Indeed, tariffs often exist to protect domestic markets, and, to achieve that end, Congress must use some form of classification when setting tariff rates. See, e.g., J.W. Hampton & Co. v. United States, 276 U.S. 394, 412-13 (1928).[11] Defendant correctly notes that Plaintiffs' argument "wholly ignores [the] obvious commercial, practical, and trade motivations Congress might have had for distinguishing certain products by age or gender for purposes of setting tariffs. . . ." [quoting Totes III]:

> [t]he rates of duty applicable to different product classifications are the result of multilateral international trade negotiations and reflect reciprocal trade concessions and particularized trade preferences. The reasons behind different duty rates vary widely based on country of origin, the type of product, the circumstances under which the product is imported, and the state of the domestic manufacturing industry. . . . Further, differential rates may be the result of the trade concessions made by the United States in return

---

[11] ("More than a hundred years later, the titles of the Tariff Acts . . . declared the purpose of those acts, among other things, to be that of encouraging the industries of the United States. Whatever we may think of the wisdom of a protection policy, we cannot hold it unconstitutional.")

for unrelated trade advantages.

Totes III, 594 F.3d at 1357 (footnotes omitted).  Def.'s Mem. in

Reply Pls.'Opp'n Def.'s Mot. Dismiss at 25, ECF No. 30.  Without

more, Congress's exercise of its right to choose delineating

factors such as the age or gender of a product's intended user

when determining tariff rates does not raise a suggestion of

invidious intent to discriminate.[12]

    It therefore follows that Plaintiffs' Amended Complaints

have not asserted facts that are specific enough to have some

evident connection to potentially unlawful behavior.  The absence

of such an apparent connection forecloses the conclusion that the

---

    [12] Indeed, historical evidence indicates that Congress
intended to protect the domestic market when setting tariffs
based on the gender of the intended wearer.  For example, with
regards to gloves, "by actual or tacit agreement, the importers
were given control of the market in ladies gloves, while the
men's glove business was left to the domestic producers."  Daniel
W. Redmond, The Leather Glove Industry in the United States 48
(1913) (unpublished Ph.D. dissertation, Columbia University).
    It logically follows that the disparate tariffs were set in
order to maintain such circumstances, leading one glove importer
to conclude that
        The tariff in force . . . has been and is now working
        satisfactorily. The government obtains from it a large
        revenue . . . American manufacturers are prospering
        under it, and importers are able to exist and to supply
        to the market gloves which can not be made here in the
        same perfection, beauty, and elegance, or are not made
        here at all[.]

Tariff Hearings Before the H. Comm. on Ways and Means, 60th Cong.
7141-43 (1909) (statement of Daniel Goldschmidt, Goldschmidt
Brothers Co.).

Amended Complaints allege more than a "sheer possibility" of invidious discriminatory conduct.  It follows that the Amended Complaints are not adequately pleaded so as to "plausibly give rise to an entitlement to relief."  Iqbal, 129 S. Ct. at 1949-50. There simply is nothing in the Amended Complaints that can connect the tariff provisions and congressional action in a way to suggest with plausibility the existence of a governmental intent to discriminate.

**CONCLUSION**

For the forgoing reasons, this matter is dismissed with prejudice.  Judgment will be entered accordingly.

So ordered.

                                        /s/ Donald C. Pogue
                                   Donald C. Pogue, Chief Judge


Dated: February 15, 2012
       New York, New York

SLIP OP 12 - 18

UNITED STATES COURT OF INTERNATIONAL TRADE

RACK ROOM SHOES, SKIZ
IMPORTS LLC, and
FOREVER 21,
INCORPORATED,

        Plaintiffs,

        v.

UNITED STATES,

        Defendant.

Before: Donald C. Pogue, Chief Judge
       Jane A. Restani, Judge
       Judith M. Barzilay, Sr. Judge.

Consol. Court No. 07-00404

## JUDGMENT

The court having heard and decided this matter, now in accordance with that opinion, this case is dismissed with prejudice.

              /s/ Donald C. Pogue
            Donald C. Pogue, Chief Judge

Dated: February 15, 2012
      New York, New York